UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-328-GWU

TONY CRAIG OSBORNE,                                                 PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,               DEFENDANT.

## INTRODUCTION

Tony Osborne brought this action to obtain judicial review of an unfavorable administrative decision on his applications for Disability Insurance Benefits and for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

1

Case: 6:08-cv-00328-GWU Doc #: 15 Filed: 08/11/09 Page: 2 of 10 - Page ID#: 83

08-328  Tony Craig Osborne

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. § 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which

08-328  Tony Craig Osborne

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. § 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which

08-328   Tony Craig Osborne

appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

3

08-328 Tony Craig Osborne

however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Osborne, a 47-year-old former coal miner with a high school education, suffered from impairments related to being status post chip fracture of the right ankle with a history of reflex sympathetic dystrophy, plantar fasciitis, a depressive disorder, possible substance-induced mood disorder and polysubstance dependence. (Tr. 16, 21). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work. (Tr. 17, 21). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 21-22). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 22).

08-328  Tony Craig Osborne

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Linda Taber included an exertional limitation to light level work restricted from a full range by such non-exertional restrictions as (1) an inability to stand or walk for more than two hours a day in 45 minute to one hour intervals  (2) an inability to sit for more than six hours a day; (3) the need for a sit/stand option; (4) an inability to ever use the feet or legs for pushing, pulling or the operation of foot controls; (5) an inability to ever climb ladders, ropes or scaffolds; (6) an inability to more than occasionally climb stairs or ramps; (7) a need to avoid concentrated exposure to vibration or industrial hazards; (8) a limitation to simple, repetitive procedures, with no frequent changes in work routines; (9) an inability to perform jobs requiring detailed or complex problem solving, independent planning, or setting goals; and (10) an inability to more than occasionally interact with the general public.  (Tr. 57-58).  In response, Taber identified a significant number of jobs which could still be performed. (Tr. 58).  Therefore, assuming that the vocational factors considered by the vocational expert fairly characterized Osborne's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

08-328  Tony Craig Osborne

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error.  Dr. Raymond Santucci examined Osborne and diagnosed exogenous obesity, reflex sympathetic dystrophy, tobacco abuse and being status post nephrectomy. (Tr. 315).  Dr. Santucci opined that the plaintiff would have "moderate" limitations in his ability to lift, sit, ambulate, stand, bend, kneel, push, pull, and carry heavy objects.  (Tr. 316).  The ALJ's findings were essentially consistent with these limitations.  The record was reviewed by Dr. Margaret Stubbs and Dr. John Rawlings, each of whom opined that the claimant would be able to lift 50 pounds occasionally and 25 pounds frequently, would have a limited ability to push or pull in the lower extremities, an inability to more than occasionally climb ladders, ropes or scaffolds, and need to avoid concentrated exposure to hazards.  (Tr. 335-342, 365-372).  The physical factors of the hypothetical question were also compatible with these limitations.

Dr. William Lester, a treating physician who saw Osborne following a right foot injury, identified more severe physical limitations than those found by the ALJ including a restriction from lifting more than 10 pounds occasionally and 25 pounds frequently, a limitation for standing and walking to less than two hours a day; an inability to sit for more than three hours and a need to miss work more than four days a month.  (Tr. 612-613).  When these restrictions were presented to the vocational expert, she could not name any jobs which would remain available.  (Tr.

08-328   Tony Craig Osborne

58-59).  The ALJ rejected this opinion as binding.  (Tr. 20).  Osborne argues that this action was erroneous.  However, the ALJ noted a number of reasons for this finding.  The doctor's report was noted to be internally inconsistent.  (Id.).  In November of 2006, Dr Lester indicated that the plaintiff's right foot was equal in temperature to the left and its flexion and extension were equal to the left in November of 2007.  (Tr. 144, 593).  The ALJ noted that medical evidence from other treating and examining sources did not reveal a totally disabling condition.  Dr. Bart Francis examined the plaintiff at Appalachian Regional Hospital in November of 2006 and reported a normal gait, and intact motor strength, and intact sensation in all four extremities.  (Tr. 261).  Dr. Santucci reported only a slight limp and indicated Osborne appeared comfortable sitting and standing.  (Id.).  The examiner found no sign of muscle atrophy and his foot was remarkably intact.  (Tr. 260).  The lack of support from Dr. Lester and Dr. Francis are good reasons for rejecting the opinion of the treating source.

The ALJ also dealt properly with the evidence of record relating to Osborne's mental condition.  Psychologist Gary Maryman examined the plaintiff and diagnosed alcohol dependence, cocaine abuse, and a major depression.  (Tr. 310).  Maryman restricted the claimant to simple and somewhat more complicated instructions and tasks and a limited ability to deal with the public.  (Tr. 311).  The mental factors of the hypothetical question were consistent with this opinion.  Psychologists Dan

08-328   Tony Craig Osborne

Vandivier (Tr. 317-318) and Lea Perritt (Tr. 373-374) each reviewed the record and opined that Osborne would be "moderately" limited in carrying out detailed instructions, maintaining attention and concentration for extended periods, interacting appropriately with the general public and setting realistic goals or making plans independently of others.  The hypothetical question was also compatible with these opinions.

Treatment records from Appalachian Regional Hospital reveal that Osborne was hospitalized in the Psychiatric Ward in December of 2006.  (Tr. 250-300, 443-582).  Upon admission, the plaintiff was diagnosed as suffering from depression, an adjustment disorder, and possible polysubstance dependence.  (Tr. 254).  His Global Assessment of Functioning (GAF) on admission was rated at 30.  (Tr. 254). Such a GAF suggests the existence of "serious" psychological impairment influenced by delusions or hallucinations according to the American Psychiatric Association's <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision), p. 34.  The claimant's condition stabilized and improved upon discharge six days later and his GAF was rated at 70, suggesting the existence of only "mild" psychological symptoms.  (Tr. 255).  More severe long-term mental limitations than those found by the ALJ were not identified.

08-328   Tony Craig Osborne


Osborne sought treatment for his mental problems at Kentucky River Community Care.  (Tr. 301-305, 599-609).  More severe, specific mental limitations than those found by the ALJ were not identified.

Osborne was found limited to the full range of sedentary level work in an administrative decision issued on September 28, 2006.  (Tr. 18).  Principles of res judicata require that the administration be bound by an earlier final decision unless a change of circumstances is proved upon a subsequent application.  Drummond v. Commissioner of Social Security, 126 F.3d 837, 842 (6th Cir. 1997).  Acquiescence Ruling 98-4(6) instructs that the agency "must adopt [the residual functional capacity finding] from a final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding . . . ."  The ALJ indicated that medical improvement occurred and raised the exertional level in the current action to light level.  (Tr. 18).  The plaintiff asserts that the ALJ's finding was inadequate.

The court notes that the September, 2006 denial decision was appealed to federal district court and came before the undersigned.  In a decision dated July 24, 2008, the court reversed and remanded the case for further consideration.  Osborne v. Astrue, London Civil Action No. 07-355-GWU.  Thus, the September, 2006 decision was no longer a "final" decision for the administration at the time of the

08-328 Tony Craig Osborne

August 27, 2008 date of the current ALJ's denial decision and, so, the residual functional capacity finding of the prior ALJ was not binding on him. The record reveals the existence of yet another administrative denial decision on November 6, 2003, which became the most recent "final" administrative decision. (Tr. 13). In that action, the ALJ found the claimant limited to the full range of light level work, a finding with which the current denial decision is compatible. <u>Osborne</u>, London Civil Action No. 07-355-GWU at p. 11. Therefore, the court must reject Osborne's arguments with regard to the <u>Drummond</u> decision.

  The undersigned concludes that the administrative decision should be affirmed. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this decision.

  This the 11th day of August, 2009.

Signed By:

<u>G. Wix Unthank</u>

**United States Senior Judge**